**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jon Evans, | No. CV-22-02049-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Critter Control Operations Incorporated, *et al.*, | |
| Defendants. | |

The Court considers Defendants' Notice of Motion and *Daubert* Motion to Exclude the Testimony of Plaintiff's Proposed Expert Laura Ingegneri (Doc. 228), Plaintiff's Response (Doc. 235), and Defendants' Reply (Doc. 245). The Court also considers Defendants' Notice of Motion and *Daubert* Motion to Exclude the Testimony of Plaintiff's Proposed Damages Expert Michael J. Stokes (Doc. 229), Plaintiff's Response (Doc. 234), and Defendants' Reply (Doc. 246). For the reasons set forth below, the Court denies Defendants' motions and will permit the testimony of both experts.

## I.    BACKGROUND

The present issues stem from Plaintiff Jon Evans's previous employment with Defendants. (Doc. 104, TAC.) During this employment, Plaintiff brought multiple concerns to Defendants' Human Resources (HR) staff Ms. Rebecca Dye regarding "unfair treatment, safety concerns, and potentially fraudulent activity." (TAC ¶ 35) After eight and a half months of employment, Defendants terminated Plaintiff on October 18, 2021. (TAC ¶ 44.) Since then, Plaintiff has become employed elsewhere. (Doc. 228 at 10.)

Plaintiff currently seeks to introduce expert testimony of Ms. Ingegneri to show that Defendants failed to investigate Plaintiff's alleged complaints "promptly and thoroughly," as is consistent with widespread HR standards. (Doc. 228-1, Ingegneri Report.) Plaintiff also seeks to introduce expert testimony of Mr. Stokes regarding the determination of damages arising from his employment termination. (Doc. 229-1, Stokes Report.) Defendants contend that both experts fall short of the standard established for expert witnesses under Federal Rule of Evidence 702 and under the factors set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc*, 509 U.S. 579 (1993).

## II.    LEGAL STANDARD

Under Rule 702, an expert may testify on the basis of "scientific, technical, or other specialized knowledge" if it "will assist the trier of fact to understand the evidence or determine a fact in issue," provided the testimony rests on "sufficient facts or data" and "reliable principles and methods," and "the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702. "There is no presumption in favor of admission," *Engilis v. Monsanto Co.*, 151 F.4th 1040, 1049 (9th Cir. 2025), and the proponent of the expert testimony must demonstrate that it satisfies *each* requirement set forth in Rule 702 by a preponderance of the evidence. Fed. R. Evid. 702; *Engilis*, 151 F.4th at 1050. If the proponent meets that burden of admissibility under Rule 702, the expert testimony may be presented to the trier of fact even if it is "shaky" or potentially incorrect. *Engilis*, 151 F.4th at 1050. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 595 (citation omitted).

## III.    ANALYSIS

### A.    Admissibility of Ms. Ingegneri's Testimony

Ms. Ingegneri has over thirty years of HR experience and has conducted or reviewed over three hundred investigations. (Ingegneri Report at 2.) In preparation of her report, Ms. Ingegneri reviewed the operative pleading, deposition transcripts of Ms. Dye and other

employees of Critter Control, and over two dozen documents that were referenced during those depositions. (Ingegneri Report at 3–4.) She concluded that Plaintiff's allegations of serious misconduct are required to be "investigated promptly and thoroughly," but "this did not appear to occur." (Ingegneri Report at 11.) She also concluded that the lack of "documentation of any interviews, any notes, or any summary of such investigation" and the "circumstances surrounding [Plaintiff's] termination" are not consistent with HR standards. (Ingegneri Report at 11.)

First, Defendants argue that Ms. Ingegneri's testimony will not help the trier of fact to understand the evidence or to determine a fact at issue because she does not use any specialized knowledge. (Doc. 228 at 4–5.) According to Defendants, the circumstances surrounding Plaintiff's termination and whether Defendants improperly investigated Plaintiff's complaints are matters of common knowledge. (Doc. 228 at 4–5.) Not so. "[C]ourts commonly permit human resources experts to testify on human resources management policies and practices and whether an employer deviated from those policies and practices." *Maharaj v. California Bank & Tr.*, 288 F.R.D. 458, 460 (E.D. Cal. 2013) (collecting cases). Whether Defendants—specifically, their HR staff—faithfully applied those policies and practices is not as intuitive as Defendants contend, as it would require some baseline knowledge of the HR industry.

Second, Defendants argue that Ms. Ingegneri fails to "identify any specific principles or methods," fails to "apply any specific principles and methods to the facts," and makes speculative conclusions. (Doc. 228 at 8.) The content of the report shows otherwise. Ms. Ingegneri expressly states the standards of internal investigations and handling employee complaints established by publications, reviews Defendants' own policies, and applied those standards and policies to specific facts she derived from a list of documents and party testimony. (Ingegneri Report. at 6–8, 10–11.) For example, Ms. Ingegneri states that internal investigation standards according to the Society for Human Resource Management require that interviewers "should also document interviews" and concluded, based on the facts presented, that this standard was not met

because "there is no documentation of any interviews." (Ingegneri Report at 6, 11.) The fact that Ms. Ingegneri later summarized the standards she applied as "[w]idely accepted HR standards" does not render her analysis of the facts unmethodical. Defendants' disagreement with Ms. Ingegneri's methods or reasoning goes to the weight of her testimony and can be tested through "vigorous cross-examination." *Daubert*, 509 U.S. at 595.

Third, Defendants argue that Ms. Ingegneri's testimony is unreliable because she based her report on incomplete information or false assumptions. (Doc. 228 at 9; Doc. 245 at 2.) According to Defendants, at Ms. Ingegneri incorrectly assumes that Defendants never investigated Plaintiff's allegations. The Court does not adopt Defendants' interpretation. Ms. Ingegneri concluded that a *prompt* and *thorough* investigation "did not appear to occur," not that no investigation occurred at all. (Ingegneri Report at 12.) Ms. Ingegneri also reviewed many of the records that Defendants assert was not reviewed, including Defendant Rollins, Inc.'s EEOC position statement and Ms. Dye's deposition and declaration (Ingegneri Report at 4–6; *see* Doc 228 at 9). The materials reviewed by Ms. Ingegneri did not include a spreadsheet categorizing the grievances Plaintiff raised while employed by Defendants (Doc. 169 ¶ 29; Doc. 169-1 at 206–08), and Plaintiff's later-taken deposition (Doc. 169 ¶ 40; Doc. 169-1 at 116), which Defendants cite in their Motion (Doc. 228 at 9), and other later-produced "investigative materials" that Defendants mention in their reply (Doc. 245 at 3–4). But Defendants do not specify how the spreadsheet, Plaintiff's deposition transcript, or vaguely referenced "investigative materials" would undermine the reliability of Ms. Ingegneri's report. Ultimately, "a lack of consideration of other evidence generally goes to the weight of an expert's testimony rather than its admissibility" and "[t]he adversary system will account for any deficiencies." *Madsen v. City of Phx.*, No. CV-19-03182-PHX-GMS, 2020 U.S. Dist. LEXIS 155467, at *8–9 (D. Ariz. Aug. 26, 2020).

Fourth, Defendants argue that Ingegneri's conclusions pertaining to Defendants' investigation are not relevant to Plaintiff's wrongful termination claim. (Doc. 245 at 5–6.)

As Defendants point out, Plaintiff has alleged that his termination violated public policy because it occurred in response to his refusal to participate in—and his repeated complaints about—Defendants' unlawful business practices. (Doc. 245 at 5–6; *see* TAC ¶¶ 50–54.) According to Defendants, Ms. Ingegneri analyzes and opines "on allegations unrelated to the live claims" by listing the various categories of complaints made by Plaintiff before his termination that include, for example, wage and hour issues. (Doc. 245 at 5.) But several of these complaints relate to the alleged "unlawful business practices" in which Plaintiff refused to participate, and those complaints are relevant to Plaintiff's wrongful termination claim. To the extent that Defendants take issue with the factual basis for Ingegneri's testimony, testing that factual basis can be remedied through "vigorous cross-examination." *Daubert*, 509 U.S. at 595.

Ms. Ingegneri's report meets the admissibility requirements of Rule 702, so the Court will deny Defendants' motion to preclude her testimony.

### B.    Admissibility of Mr. Stokes's Testimony

In preparing his report, Mr. Stokes reviewed three "alternative" pre-termination annual salaries ($100,000; $130,000; and $165,000), Plaintiff's work life expectancy based on his age at the time of termination, and an allocation of fringe benefits. Based on this information, Mr. Stokes concluded that the present value of loss of Plaintiff's earnings and benefits ranges from $442,661 to $1,206,330. (Stokes Report at 4–7, 11.)

Defendants argue that the three base earnings Mr. Stokes uses to calculate damages are improper because they are "aspirational" and higher than Plaintiff's actual earnings in the eight months he was employed by Defendants ($51,589) or that he could have earned over the entire year ($72,703). (Doc. 229 at 2–3.) But they do not argue that Mr. Stokes's methods and application of those methods to those numbers, aspirational as they might be, were unreliable. Plaintiff contends, and the Court agrees, that the use of hypothetical base earnings goes to the testimony's weight, not admissibility.

The cases cited by Defendants do not counsel otherwise. First, in *Wagner v. ABW Legacy Corporation, Inc.*, the court excluded an expert opinion regarding overtime pay

owed for relying on an improper number of hours worked. 2016 WL 880371, at 9–10 (D. Ariz. 2016). Second, in *EEOC v. Freeman*, the court excluded an expert's report based on a litany of statistical errors found in that expert's application of methodology. 961 F. Supp. 2d 783, 793–96 (D. Md. 2013). Plaintiff argues that those cases are distinguishable, and the Court agrees. Here, the purported error is not one of improper factual review like it was in *Wagner* or flawed statistical analysis like what occurred in *Freeman*; it is one of relying on hypotheticals. But the use of hypotheticals, on its own, does not render an expert's testimony unreliable. *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 968 (9th Cir. 2013) ("As in any damages case, the calculation had to address a hypothetical world that never existed."). Rather, the proper vehicle through which the hypotheticals can be tested is cross-examination and introduction of contrary evidence. *See Daubert*, 509 U.S. at 595.

Defendants further take issue that the salary hypotheticals are borne only from Plaintiff's counsel's assumptions, so Mr. Stokes's report violates Federal Rule of Civil Procedure 26(a)(2)(B). (Doc. 246 at 5.) Rule 26 only requires that an expert witness's report must contain the facts or data considered by the witness in forming the opinions therein. Here, Stokes's report openly recites what base earnings he relies upon for his calculations and explains that the source of those earnings was Plaintiff's counsel. The Court finds this disclosure sufficient for the purposes of Rule 26.

Defendants' concern that there is no evidence Plaintiff ever made, or was on track to make, $100,000, $130,000, or $165,000 while in Defendants' employ (Stokes Report at 5) is well-taken, however. In response, Plaintiff alludes to evidence that supports these numbers but has not yet made a specific showing of it apart from stating that a co-worker made "nearly $120,000." (Doc. 234 at 6.) That foundational evidence must be admitted before Mr. Stokes testifies, otherwise the Court will entertain Defendants' objection.

Next, Defendants urge the Court to exclude Mr. Stokes's testimony because he failed to mitigate the damages calculation to account for the fact that Plaintiff secured new employment one year after termination. (Doc. 246 at 8.) Again, *Daubert* provides clear

- 6 -

direction on this issue; the appropriate and traditional means of handling shaky yet admissible evidence is through cross-examination. *Daubert*, 509 U.S. at 595. The fact that Mr. Stokes did not account for Plaintiff's supposed mitigation of damages is another example of a point Defendants may test before the jury.

Finally, Defendants argue that Mr. Stokes's declaration (Doc. 234-1) is an improper supplement to his report. It is not. Mr. Stokes's declaration is only used to support Plaintiff's responsive brief to Defendants' motion, and the Court reviews it as such. Any opinions appearing in the supplement exclusively are not admissible at trial.

While Defendants identify plenty of fodder for cross-examination, the Court will not exclude opinions "merely because they are impeachable." *Alaska Rent-A-Car, Inc.*, 738 F.3d at 969; *see also Daubert*, 509 U.S. at 595. Accordingly, the Court will deny Defendants' motion to preclude Mr. Stokes's testimony.

**IT IS ORDERED** denying Defendants' Notice of Motion and *Daubert* Motion to Exclude the Testimony of Plaintiff's Proposed Expert Laura Ingegneri (Doc. 228).

**IT IS FURTHER ORDERED** denying Defendants' Notice of Motion and *Daubert* Motion to Exclude the Testimony of Plaintiff's Proposed Expert Michael J. Stokes (Doc. 229).

The Court will set a pre-trial status conference by separate Order.

Dated this 21st day of April, 2026.

_____
Honorable John J. Tuchi
United States District Judge

- 7 -